IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TWIN CITY FIRE INSURANCE CO.,<br>One Hartford Plaza<br>Hartford, CT<br><br>        Plaintiff,<br><br>        v.<br><br>CHARTWELL LAW OFFICES, LLP,<br>Valley Forge Corporate Center<br>970 Rittenhouse Road, Suite 300<br>Eagleville, PA<br><br>        Defendants. | Civ. A. No. |

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff Twin City Fire Insurance Company ("Twin City") brings this complaint for declaratory judgment in its favor and against defendant the Chartwell Law Offices, LLP ("Chartwell"), as more fully described below:

### INTRODUCTION

1. This is a coverage dispute arising under a claims-made professional liability insurance policy (the "Policy") issued by Twin City to Chartwell, a law firm primarily based in Pennsylvania. Chartwell has requested coverage under the Policy for a malpractice action (the "Malpractice Action") filed against it by its former clients: Bridgeport Fire Company #1, George Clay Steam & Fire Co. #1, Good Will Fire Co., King of Prussia Volunteer Fire Company, Inc., and Swedeland Volunteer Fire Company, Inc. (collectively, the "Fire Companies"). Twin City seeks a declaration of non-coverage regarding the Malpractice Action because, among other reasons, as of the inception of the Policy, insureds under the Policy were

aware of alleged acts, errors, omissions, facts, circumstances or other information from which they could have reasonably foreseen the Malpractice Claim.

## THE PARTIES

2.  Plaintiff Twin City is a corporation organized under the laws of the state of Indiana with a principal place of business in Connecticut.

3.  Defendant Chartwell is a limited liability partnership organized under the laws of the Commonwealth of Pennsylvania. Upon information and belief, Chartwell's principal place of business is in Montgomery County, Pennsylvania although it has offices in several other locations, including Philadelphia, Pennsylvania, which is where the attorney defendants in the underlying action worked.

## JURISDICTION AND VENUE

4.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the suit is between citizens of different states and the amount in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs.

5.  Venue is proper in the Eastern District of Pennsylvania under 28 U.S.C. § 1391 because Chartwell is domiciled in this judicial district and a substantial part of the events giving rise to the claim occurred in this judicial district.

## FACTUAL BACKGROUND

The Policy

6.  Twin City issued the Policy, numbered PF 0248449, for the policy period of February 8, 2009 to February 8, 2010. A copy of the Policy is attached as Exhibit 1.

7.  In the Policy, Twin City agreed, subject to various deductibles, conditions, limitations, exclusions and terms specifically stated within the Policy, to: (a) pay sums that the

insured "shall become legally obligated to pay as **damages** resulting from any covered claim," and (b) "defend all **insureds** against whom a covered **claim** is made." Policy, § I.A.

8. An insured pursuant to the Policy includes Chartwell and any predecessor firm as well as "[a]ny lawyer who was, is now or hereafter becomes a principal, officer, director, employee, principal shareholder or member of Chartwell." Policy, § I.B.5. A predecessor firm includes, among other things, a legal entity listed in the Predecessor Firm Endorsement attached to the Policy. Policy, § I.B.10. That Predecessor Firm Endorsement lists Troy MacBride, LLC as a predecessor firm and states that Troy MacBride, LLC became affiliated with Chartwell as of June 16, 2008, with a retroactive date for coverage of January 1, 2008. Ex. 1, Policy, Endorsement No. 7.

9. A claim, as defined by the Policy, means "an allegation of a wrongful act or personal injury" in conjunction with, among other things, a written demand, complaint, petition or claim for relief "seeking damages against . . . an insured filed in a lawsuit . . . that has been received or served upon an insured." Ex. 1, Policy, § I.B.2.

10. Pursuant to the Coverage Agreement in the Policy, the Policy does not provide coverage for a claim if certain conditions relating to the claim have not been met by the insured. One such condition is the Policy does not provide coverage for a claim if, as of the inception date of the Policy, an insured was aware of any wrongful act, personal injury, fact, circumstance or other situation that he or she knew might result in a claim or could reasonably have foreseen might result in a claim.

11. Specifically, the Policy states:

> Our agreement to pay and/or defend a **claim** . . . shall only apply if:
>
> \*\*\*

3

with respect to such **claim**, no **insured** as of the inception date of this policy was aware of any **wrongful act, personal injury**, fact, circumstance or other situation that he or she (i) knew might result in a **claim** or (ii) could reasonably have foreseen might result in a **claim**.

Policy, § I.A.3.

12. A wrongful act under the Policy is defined as "an actual or alleged negligent act, error or omission committed in the performance or failure to perform professional legal services." Policy, § I.B.14

13. The Policy also requires that an insured give immediate written notice to Twin City whenever he or she becomes aware of any wrongful act, personal injury or other fact, circumstance or situation that he or she believes might result in a claim or could reasonably have foreseen might result in a claim.

14. Specifically, the Policy states:

   A. Awareness of Circumstances

   If during the **policy period** an **insured** becomes aware of any **wrongful act, personal injury** or other fact, circumstance or situation that he or she (i) believes might result in a **claim** or (ii) could reasonably have foreseen might result in a **claim**, the **insured** shall immediately and in all instances prior to the expiration of the **policy period**, give written notice to us of the particulars of:

   1. The nature and dates of the specific act, error, omission or other fact, circumstances or situation giving rise to the potential of a claim, including, without limitation, the identity of each **insured** who participated and/or had supervisory responsibility for the matter and the reasons why it seems foreseeable that the matter may give rise to a claim; and

   2. The identity of each potential claimant and the alleged injury or damage which has resulted or may result from such **wrongful act, personal injury** or other fact, circumstance or situation and the steps, if any, undertaken or proposed to be undertaken to mitigate **damages**; and

    3.      The conditions under which the **insured** first became aware of such **wrongful act, personal injury** or other fact, circumstance or situation.

        This policy shall then apply to **any claim** that is subsequently made against the **insured** and arises out of **wrongful act, personal injury** or other fact, circumstance or situation reported as a notice of circumstance in accordance with these **Awareness of Circumstances Provisions**.

Policy, § III.A.

    15.    The Policy also limits the types of damages that may be recovered by Chartwell under the Policy. Generally, the Policy provides coverage for "compensatory damages that an insured becomes legally obligated to pay as a result of any judgment, award or settlement of any actual or alleged wrongful act or personal injury. . . ." Policy, § I.B.4. The Policy, however, expressly does not provide coverage for: (a) the "[r]estitution, reduction, or set off of any fees, other consideration, and/or expenses paid to or charged by an insured for professional legal services"; or (b) "[a]ny damages which are a multiple of compensatory damages awarded against an insured." Policy, § I.B.4.b., c.

The Malpractice Action

    16.    On November 29, 2011, the Fire Companies filed a complaint in the Court of Common Pleas of York County, Pennsylvania against Chartwell, Christopher L. Troy, Esquire, Michael J. Alivernini, Esquire, Joseph A. Juliana, Esquire, and Troy, MacBride, Veith, LLC (collectively, the "Chartwell Defendants"). A copy of the complaint is attached as Exhibit 2.

    17.    Upon information and belief, Troy, Alivernini, and Juliana are or were employed as attorneys of Chartwell and Defendant Troy, MacBride, Veith, LLC (the "TMV Firm"), which merged with Chartwell in June 2008.

18. The Fire Companies filed an amended complaint against the same defendants on February 27, 2012 (the "Amended Complaint"). A copy of the amended complaint with exhibits is attached as Exhibit 3.

19. In the Amended Complaint, the Fire Companies allege that the Chartwell Defendants are liable to them for professional negligence, breach of contract, and promissory estoppel based on the Chartwell Defendants' representation of the Plaintiff Fire Companies in two property damage actions (the "Property Damage Actions"). Ex. 3, Am. Compl., ¶¶ 95-125.

### The Chartwell Defendants' Representation of the Fire Companies in the Property Damage Actions

20. The Fire Companies are volunteer fire departments which allegedly sustained damages to their firefighting equipment while fighting a fire at a commercial complex in Bridgeport, Pennsylvania in May 2001 (the "Bridgeport Fire"). Ex. 3, Am. Compl. ¶¶ 1, 27.

21. In or around 2003, the Fire Companies retained Defendant Troy and his then-firm Hecker Brown Sherry and Johnson (the "Hecker Firm") to represent them in seeking to recover the alleged damages to their firefighting equipment from the Bridgeport Fire. Ex. 3, Am. Compl. ¶ 32.

22. Glatfelter Claims Management, Inc. ("Glatfelter"), a company that provides claims management services to the Fire Companies' insurer, American Alternative Insurance Corporation, Inc. ("AAIC"), managed the litigation on behalf of the Fire Companies and AAIC. In that role, Glatfelter communicated with the Chartwell Defendants regarding the litigation on behalf of the Fire Companies. Ex. 3, Am. Compl. ¶¶ 14-15.

23. In 2003, Troy and the Hecker Firm, on behalf of the Fire Companies, filed two complaints in the Court of Common Pleas of Montgomery County, Pennsylvania, seeking to

recover the alleged damages sustained to the fire companies' equipment from the Bridgeport Fire, *i.e.*, the "Property Damage Actions." Ex. 3, Am. Compl. ¶ 27.

24. The defendants in the Property Damage Actions included the Bushar Corporation, Charles W. Bushar, III, and Lauretta V. Bushar (collectively, the "Bushars"). Ex. 3, Am. Compl. ¶ 28. At the time the Property Damage Actions were filed, the Bushars were already involved in other litigation related to liability for the Bridgeport Fire, including a class action (the "Class Action"). *Id.* ¶ 29.

25. The Bushars subsequently joined the Fire Companies as defendants in the Class Action, arguing that the Fire Companies were at fault for the fire because they had been incompetent in fighting it. Ex. 3, Am. Compl. ¶ 30. The Fire Companies retained Troy and the Hecker Firm to defend them in the Class Action and Glatfelter managed the litigation for the Fire Companies. *Id.* ¶¶ 30-32.

26. The Fire Companies allegedly informed the Bushars' attorneys that they would seek sanctions and other relief against them and the Bushars if the Fire Companies were not dismissed from the Class Action because there were no legal bases for the Bushars' claims against the Fire Companies. Ex. 3, Am. Compl. ¶ 34. The Bushars, however, refused to dismiss the Fire Companies until discovery was complete, causing the Fire Companies to spend in excess of $870,000 to defend the action. *Id.* ¶¶ 35-40.

27. Defendants Troy, Alivernini, and Juliana eventually became attorneys at the TMV Firm and continued to represent the Fire Companies in the Property Damage Actions and Class Action.

28. Defendants Troy, Alivernini, Juliana and the TMV Firm also allegedly discussed with and advised Glatfelter about bringing a cause of action against the Bushars and their

7

counsel for wrongful use of civil proceedings (a "Dragonetti Act Claim," as it is commonly referred to in Pennsylvania) based on their joinder of the Fire Companies to the Class Action without a valid legal basis. Ex. 3, Am. Compl. ¶¶ 36-48.

29. After the dismissal of the Fire Companies from the Class Action, Glatfelter allegedly instructed Defendants Troy, Alivernini, Juliana and the TMV Firm that they could settle the Property Damage Actions for $75,000. Ex. 3, Am. Compl. ¶¶ 50-53. Glatfelter also allegedly instructed these defendants that a settlement could not include a release of the Fire Companies' right to bring a Dragonetti Act Claim against the Bushars and their attorneys. *Id.* ¶¶ 52-66.

30. On or about February 14, 2008, Defendant Alivernini or Defendant Juliana negotiated a settlement of the Property Damage Actions with the Bushars attorney, Harry Mahoney, Esquire, for $75,000, and informed the trial court of the settlement. Ex. 3, Am. Compl. ¶ 67; Ex. 4, Tr. Ct. Op., p. 2.

31. Mahoney subsequently drafted a general release to accompany the settlement agreement. Because Mahoney's draft general release released the Fire Companies' right to bring a Dragonetti Act Claim against the Bushars and their counsel, Defendant Alivernini revised the draft release to exclude a release of any Dragonetti Act Claim by the Fire Companies. Ex. 3, Am. Compl. ¶¶ 74-79; Ex. 4, Tr. Ct. Op., p. 2.

32. The Bushars' counsel objected to the revised release and moved to enforce the settlement with a general release. Ex. 3, Am. Compl. ¶ 80; Ex. 4, Tr. Ct. Op., p. 2.

33. The trial court subsequently conducted several evidentiary hearings regarding whether the settlement of the Property Damage Actions was intended to include a general release. Ex. 3, Am. Compl. ¶ 78; Ex. 4, Tr. Ct. Op. pp. 2-3.

34.  During these settlement hearings, the trial court expressed dissatisfaction on several occasions with Defendant the TMV Firm regarding its conduct in settling the Property Damage Actions, stating, among other things:

> One moment you [Defendant Juliana] want to enforce a settlement agreement, the other moment you're withdrawing the very settlement agreement you want to enforce. So, look, there are moves being made. That's what lawyers do.
>
> I'm more concerned about the day you walked into my courtroom, and led us all to believe that the case was settlement with general releases. . . .

Ex. 5, 5/28/2008 Hrg., at 54.

35.  Defendants Troy and the TMV Firm were aware of the trial court's dissatisfaction with the TMV Firm as Defendant Troy explained in a May 29, 2008 letter to Mark Mitchell of Glatfelter:

> Judge O'Neill is apparently dissatisfied with our firm, as well as Glatfelter, for pressing the matter without the consent of the Fire Companies, and for what he believes was a lack of candor to the court at the February 14, 2008 hearing concerning the scope of the proposed settlement.

May 29, 2008 Letter; see Ex. 3 (attached as Exhibit B to Am. Compl.).

36.  Defendant Troy also believed, based on the trial court's statements during the evidentiary hearings, that the trial court had concluded that the TMV Firm's position that the settlement did not include a general release was unfounded. Defendant Troy expressed his belief in that respect in his letter to Mitchell:

> Based upon my review of the transcripts from the prior evidentiary hearings, which I did not attend, and upon my observations at the last two days of the continued hearing, *it is clear to me that Judge O'Neill has already concluded (1) that our firm, along with Glatfelter, created the issue that is currently being litigated, and (2) that for some unknown reason, our position is unfounded.*

*Id.* (emphasis added).

37. Defendant Troy also was aware, as stated in his May 2008 letter to Mitchell, that Glatfelter had expressed a belief that the settlement agreement issue was something that the TMV Firm and its attorneys "did or failed to do":

> While this matter is indeed a bit of a 'hybrid', *we disagree that* a significant part of the evidentiary hearing stems from the subrogation action that my firm is handling on a contingency fee basis, or that *the costs and fees associated with the hearing are a result of something our firm's attorneys did or failed to do*.

*Id.* (emphasis added).

38. And Defendant Troy and the TMV Firm were aware that Glatfelter had asked the TMV Firm not to do any additional work with regard to the settlement agreement issue and that Glatfelter was consulting with another attorney to "evaluate Glatfelter's position":

> At your request, we have not done any additional work on this matter since the hearing of May 12, 2008. It is our understanding that you wanted to speak with Rees Griffiths after he had an opportunity to review all the transcripts from the hearing so you could evaluate Glatfelter's position.

*Id.*

39. On July 2, 2009, the trial court granted the Bushars' motion and directed the Fire Companies to execute the general release drafted by Mahoney. Ex. 3, Am. Compl. ¶ 81-82, Ex. K to Am. Compl. According to the trial court's opinion issued on September 4, 2009, the settlement included a general release because, among other reasons: (a) the Fire Companies had not raised the issue of preserving the Dragonetti Act Claim during the settlement negotiations or in court; (b) testimony from several attorneys involved in the settlement negotiations showed that there was an understanding that there was a global settlement; and (c) the Fire Companies had

not timely objected to the general release drafted by the Bushars' attorney. Ex. 4, Tr. Ct. Op., pp. 9-10.

40. The Superior Court affirmed the trial court's decision on May 6, 2010 and the Pennsylvania Supreme Court subsequently denied the Fire Companies' Petition for Review. Ex. 3, Am. Compl. ¶¶ 88-89, Super. Ct. Op., Ex. L. to Am. Compl.

### The Fire Companies' Allegations of Liability and Damages Against the Chartwell Defendants

41. The Fire Companies allege in their Amended Complaint that the Chartwell Defendants are liable to them for negligence, breach of contract and promissory estoppel for among other things: (a) settling the Fire Companies' right to bring Dragonetti Act Claims without the Fire Companies' authority; (b) informing the trial court that they had the authority to negotiate a "global settlement" when the Fire Companies had specifically instructed them to preserve any Dragonetti Act Claims; (c) failing to inform the Bushars' counsel and the court that a settlement could not include a release of Dragonetti Act Claims; and (d) failing to promptly object to the draft general release which encompassed the Fire Companies' right to bring Dragonetti Act Claims. Ex. 3, Am. Compl. ¶¶ 95-125.

42. Based on the above alleged actions, the Fire Companies seek to recover from the Chartwell Defendants $1,005,640.25 for costs and fees that they paid to the Chartwell Defendants and others to defend against the Class Action and to defend the motion to compel the enforcement of the settlement. Ex. 3, Am. Compl. ¶ 98. The Fire Companies further seek "treble the sum of $878,275.38, thereby making them whole for the full measure of damages they stood to recover in connection with the negligently released abuse-of-process/Dragonetti claims." *Id.* ¶ Wherefore Clause, page 22.

...

## The Coverage Dispute

43. On February 3, 2010, Chartwell contacted Twin City stating that it had been asked by counsel for the Fire Companies to enter into a tolling agreement relating to Chartwell's representation of the Fire Companies in the Property Damage Actions.

44. Chartwell did not notify Twin City of any facts, circumstances or other information relating to a potential malpractice claim by the Fire Companies prior to February 3, 2010.

45. On February 18, 2010 and June 23, 2010, Twin City sent letters to Chartwell acknowledging receipt of the claim and reserving all of Twin City's rights and defenses available under the Policy and the law. *See* Ex. 6, 2/18/2010 Letter; Ex. 7, 6/23/2010 Letter.

46. Twin City subsequently retained counsel to defend the Chartwell Defendants in the Malpractice Action and that counsel continues to represent the Chartwell Defendants.

47. On September 12, 2012, Twin City sent a letter to Chartwell stating that there was no coverage for the Malpractice Claim because it appeared that: (a) as of the February 8, 2009 inception date of the Policy, the Chartwell Defendants had knowledge of facts, circumstances or other situations from which they could have reasonably foreseen a claim being made by the Fire Companies against Chartwell, which violated the Coverage Agreement as set forth in Section I.A. of the Policy; (b) Chartwell did not provide immediate notice to Twin City of facts, circumstances, or other situations from which they could reasonably have foreseen a claim resulting, in violation of Section III.A. of the Policy; and (c) the Policy did not provide coverage for the damages being sought by the Fire Companies in the Malpractice Action pursuant to the definition for Damages in Section I.B.4 of the Policy. *See* Ex. 8, September 12, 2012 Letter. Twin City also reserved its rights to raise any other defenses under the Policy and the law. *See id.*

## COUNT I
## (Declaratory Judgment)

48. Twin City incorporates by reference all of the preceding paragraphs of this Complaint as though fully set forth herein.

49. Because the parties are in disagreement as to whether there is coverage for the Malpractice Claim, an actual controversy exists between the parties regarding their rights, duties and obligations in connection with this section of the Policy.

50. Twin City is entitled to a judicial declaration that there is no coverage for the Malpractice Claim pursuant to Section I.A. of the Policy, because as of the February 8, 2009 inception date of the Policy, insureds under the Policy were aware of alleged acts, errors or omissions as well as other facts and circumstances which they knew might result in the Malpractice Claim by the Fire Companies or from which they could reasonably have foreseen the Malpractice Claim resulting.

51. Twin City is entitled to a judicial declaration that there is no coverage for the Malpractice Claim pursuant to Section III.A. of the Policy because insureds under the Policy failed to give immediate written notice to Twin City of the particulars of alleged acts, errors, omissions, facts, and circumstances from which they could have reasonably foreseen the Malpractice Claim.

52. Twin City is entitled to a judicial declaration that there is no coverage for the damages sought in the Malpractice Claim pursuant to the Policy's definition of damages in Section I.B.4. of the Policy because the Fire Companies are seeking the restitution of fees and expenses paid to Chartwell for professional legal services as well as a multiple of compensatory damages.

53. Twin City is entitled to a judicial declaration that there is no coverage for the Malpractice Action based on any other applicable terms, conditions and exclusions of the Policy and applicable law.

WHEREFORE, Twin City requests that judgment be entered in its favor and against Chartwell, and ask this Court to:

A. Determine, decide adjudicate and declare the rights and liabilities of the parties hereto with respect to the Policy;

B. Determine, decide adjudicate and declare that there is no duty to defend or indemnify Chartwell under the Policy based on the grounds set forth in this Complaint and any other grounds pursuant to Twin City's declination and reservation of rights;

C. Award Twin City all costs and expenses incurred in the matter, and grant any such other and further relief which this Court deems just and proper.

Dated: September 14, 2012

HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER

By: Ronald P. Schiller (PA ID 41357)
Michael Carlson (PA ID 89937)
One Logan Square, 27th Floor
Philadelphia, Pennsylvania 19103
(215) 568-6200
(215) 568-0300 facsimile
rschiller@hangley.com
mcarlson@hangley.com